O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHRISTINA PALOS,                              )    NO. EDCV 09-02182-MAN
                                              )
                   Plaintiff,                 )
                                              )    MEMORANDUM OPINION
          v.                                  )
                                              )    AND ORDER
MICHAEL J. ASTRUE,                            )
Commissioner of Social Security,             )
                                              )
                   Defendant.                 )
_____)

        Plaintiff filed a Complaint on December 3, 2009, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for a period of disability and disability
insurance benefits ("DIB").  On January 6, 2010, the parties consented
to proceed before the undersigned United States Magistrate Judge,
pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation
on August 3, 2010, in which:  plaintiff seeks an order reversing the
Commissioner's decision and remanding this case for the payment of
benefits or, alternatively, for further administrative proceedings; and
defendant requests that the Commissioner's decision be affirmed.  The
Court has taken the parties' Joint Stipulation under submission without

oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for a period of disability and DIB. (Administrative Record ("A.R.") 129-31.) Plaintiff claims to have been disabled since September 21, 2003, due to bipolar disorder, attention deficit disorder ("ADD"), anxiety, nervousness, depression, poor sleep, mood swings, nausea, dizziness, shakiness, and an inability to concentrate. (*See, e.g.,* A.R. 46, 56-57, 68, 71-72, 137, 168, 172, 193, 196.) Plaintiff later alleged an inability to work due to affective mood disorder. (*See, e.g.,* Joint Stipulation ("Joint Stip.") at 2.) Plaintiff has past relevant work experience as a nurse assistant and emergency room clerk.[1] (A.R. 16.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 51-54, 57-61), plaintiff requested a hearing (A.R. 62). On March 19, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge John Kays (the "ALJ"). (A.R. 18-43.) Vocational expert Susan Allison, medical expert Dr. Craig Rath (a psychologist), and plaintiff's son Javier Palos also testified. (*Id.*) On September 2, 2009, the ALJ denied plaintiff's claim (A.R. 8-17), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-4). That decision is now at issue in this action.

---

[1]     Although not discussed in the ALJ's decision, it appears that plaintiff also has past relevant work experience as a clerk and receptionist. (*See, e.g.,* A.R. 138.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since February 21, 2003, the alleged onset date of plaintiff's claimed disability.  (A.R. 10.)  The ALJ determined that plaintiff has the following severe impairments:  bipolar disorder; and substance addiction disorder.  (*Id.*)  The ALJ also determined that if plaintiff stopped her substance abuse, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d)).  (A.R. 11.)

The ALJ determined that, absent substance abuse, plaintiff would have the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels but with the following nonexertional limitations:  to avoid [having] more than [a] moderate degree of stress[ful] work, [being] in charge of [the] safety of others, working with dangerous equipment, and socially interacting with the general public."  (A.R. 12.)

The ALJ concluded that plaintiff was unable to perform her past relevant work.  (A.R. 15.)  However, having considered plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that significant jobs exist in the national economy that plaintiff could perform, absent substance abuse, including sales attendant, cafeteria attendant, and general office clerk.  (A.R. 16-17.)  The ALJ further determined that plaintiff's substance abuse was a contributing factor material to the determination

3

of disability, because plaintiff would not be disabled if she stopped her substance abuse.  (A.R. 17.)  Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act from the alleged onset date through the date of his decision.  (*Id.*)

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

4

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following claims:  (1) the ALJ did not consider the opinions of plaintiff's treating physicians properly; (2) the ALJ did not consider the lay witness testimony and third party statement properly; (3) the ALJ did not consider plaintiff's credibility properly; and (4) the ALJ did not assess plaintiff's RFC properly.[2]  (Joint Stip. at 2-4.)

///

///

///

_____

[2]     Within her first claim, plaintiff also asserts that the ALJ failed to develop the record fully.  (See Joint Stip. at 8-9.)  For purposes of clarity, the Court will address this issue separately. Additionally, the Court will address plaintiff's second and fourth claims together.

5

**I.   The ALJ Failed To Develop The Record With Respect To Plaintiff's Drug Use.**

An ALJ "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).  Pursuant to 20 C.F.R. § 404.1512(e), the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information . . . ."  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)(noting that "[a]mbiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry'"); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)(noting that "[i]f the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry").  "In cases of mental impairments, this duty is especially important." DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The ALJ erred by failing to develop the record regarding plaintiff's drug use.  In pertinent part, the record reflects that, on May 1, 2006, plaintiff was evaluated by both staff psychiatrist Dr. Ellison Chang, M.D., and clinician Albert Fam, LCSW, at the Riverside County Medical Center.  (A.R. 283-90.)  Dr. Chang noted plaintiff's past methamphetamine use and her current cravings for methamphetamine; diagnosed plaintiff with, among other things, amphetamine abuse; and referred plaintiff to the Corona Substance Abuse program.  (A.R. 283.)  Clinician Albert Fam also noted plaintiff's past drug use (A.R. 284) and

that she was not using alcohol and/or street drugs currently (A.R. 286). On May 9, 2006, plaintiff was again treated by Dr. Chang and a reference was made to command hallucinations and "amph[etamines]" eight months ago.[3]  (A.R. 314.)

     On June 10, 2006, Dr. Romualdo R. Rodriguez, M.D., an examining physician, performed a complete psychiatric evaluation on plaintiff. (A.R. 271-77.)  Dr. Rodriguez noted that plaintiff was not then using drugs and supposedly had last used illegal drugs approximately two years ago.[4]  (A.R. 273.)  Dr. Rodriguez diagnosed plaintiff with, among other things, "[p]olysubstance dependence, supposedly in full sustained remission."  (A.R. 275.)  He further noted that, while plaintiff has some functional limitations, "[f]rom a psychiatric point of view, as long as [plaintiff] continues free of all illegal drugs and uses psychiatric medications correctly, she can easily recover within twelve months."  (A.R. 276-77.)

     After reviewing plaintiff's medical records, including Dr. Chang's diagnosis of "amphetamine abuse," medical expert Craig Rath, a psychologist, implicitly noted the lack of clarity in Dr. Chang's diagnosis of plaintiff, testifying that "[i]t doesn't say dependence or

---

     [3]     Although later treatment notes from Dr. Chang do not include a discussion of plaintiff's drug use, the majority include a check box reference to plaintiff's denial of current substance abuse/dependence. (See, e.g., A.R. 311 (June 20, 2006 -- deny); A.R. 310 (August 17, 2005 -- deny); A.R. 308 (September 9, 2006 -- deny); A.R. 307 (September 29, 2006 -- deny); A.R. 305 (November 9, 2006 -- deny); A.R. 304 (December 21, 2006 -- deny); A.R. 303 (January 18, 2007 -- deny); A.R. 302 (February 20, 2007 -- deny); A.R. 301 (illegible date in 2007 -- deny).)

     [4]     At the 2009 hearing, plaintiff reported that it had been "years" since she last used methamphetamines.  (A.R. 31.)

exactly what they mean or history of [amphetamine abuse]." (A.R. 23.)
Curiously, and without explanation, upon seeing an identical copy of Dr.
Chang's diagnosis in a later exhibit, Dr. Rath unequivocally opined that
Dr. Chang's diagnosis of plaintiff's "meth[amphetamine] abuse . . .
mean[t] current [abuse]." (A.R. 24.) Accordingly, Dr. Rath opined that
plaintiff was abusing methamphetamines until "some date in [20]06."
(A.R. 24.) Dr. Rath concluded that, absent substance abuse, plaintiff
does not meet a listing and has the functional capacity for "no more
than a moderate degree of stress."[5] (A.R. 24-25.) Dr. Rath's opinion
was echoed in both the ALJ's RFC and his findings that, absent substance
abuse, plaintiff does not meet a listing and is not disabled.

The Court is not convinced, however, that substantial evidence
supports Dr. Rath's determination that plaintiff abused drugs until some
date in 2006. After carefully reviewing the record as well as the
supplemental briefs submitted by both parties, it is still entirely
unclear whether Dr. Chang's May 1, 2006 diagnosis of amphetamine abuse
referred to ongoing or prior substance abuse. Dr. Chang's treatment
note only indicates that plaintiff had cravings for methamphetamine and
a history of methamphetamine abuse. Although Dr. Chang referred
plaintiff to a substance abuse program, it is unclear whether he
referred plaintiff there to avoid a relapse or because of then current
methamphetamine use. Dr. Rodriguez's reference, in his June 10, 2006
evaluation, to plaintiff's supposed two-year remission in her substance
abuse, and his note that plaintiff was not using drugs currently --

---

[5]    Specifically, he opined that plaintiff should avoid being in
charge of the safety operations of others, using dangerous equipment,
and stressful situations with the general public. (A.R. 25.)

8

*i.e.*, in June 2006 -- further clouds the issue of whether substantial evidence supports the ALJ's conclusion, based on Dr. Rath's opinion, that plaintiff's substance abuse was ongoing in May 2006.

Without knowing when plaintiff stopped using drugs, Dr. Rath and, more critically, the ALJ, who relied on Dr. Rath's opinion, could not have properly assessed plaintiff's residual functional capacity or determined whether plaintiff met a listing in the absence of drug abuse. Further, the ALJ could not have evaluated properly, as required under 20 C.F.R. § 404.1535(b): (1) which of plaintiff's physical and mental limitations would remain if plaintiff refrained from drug use; and (2) whether plaintiff's remaining limitations would be disabling. Accordingly, the ALJ could not have properly determined whether plaintiff's drug abuse is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). Therefore, in view of the ambiguity surrounding plaintiff's drug use and the significant role it plays in the ALJ's findings and ultimate disability determination, the ALJ's failure to develop the record further constitutes reversible error.

**II.   The ALJ Failed To Consider The Opinions Of Plaintiff's Treating Physicians Properly.**

It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an

9

examining physician's opinion carries more weight than a reviewing physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. <u>Magallanes</u>, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)(as amended). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id*. However, an ALJ "need not discuss *all* evidence presented to [him]." <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(emphasis in original); *see also* <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003)(noting that an ALJ need not discuss every piece of evidence). An ALJ must explain only why "significant probative evidence has been rejected." <u>Vincent</u>, 739 F.2d at 1395 (internal quotations and citation omitted).

A.  <u>Dr. Isreal</u>

The ALJ erred by failing to discuss the opinion of plaintiff's treating physician, Dr. Isreal. Dr. Isreal diagnosed plaintiff with bipolar disorder and attention deficit hyperactivity disorder (ADHD); opined that plaintiff had mildly impaired memory and judgment; and noted that plaintiff had evidence of depression, anxiety, decreased energy, and manic syndrome. (A.R. 416.) Dr. Isreal noted that plaintiff was not able to:  maintain a sustained level of concentration; sustain

10

repetitive tasks for an extended period; adapt to new or stressful situations; interact appropriately with family, strangers, coworkers, or supervisors; or complete a 40 hour work week without decompensating. (*Id.*)  Dr. Isreal further noted that plaintiff needed assistance with her medications and keeping appointments and that she was unable to manage her own funds in her best interest.[6]  (*Id.*)

While an ALJ need not discuss every piece of evidence, an ALJ must explain why significant and probative evidence -- such as the opinion of Dr. Isreal -- is rejected.  Here, the ALJ not only failed to discuss Dr. Isreal's opinion but also failed to give any reason for rejecting Dr. Isreal's opinion.  Accordingly, the ALJ committed error.

B.  <u>Dr. Chang</u>

Absent further inquiry, the ALJ cannot properly assess, let alone reject, the opinion of plaintiff's treating psychiatrist, Dr. Chang.  In his decision, the ALJ gives diminished weight to Dr. Chang's opinion, because, among other things, his treatment notes do not even discuss plaintiff's drug use.  (A.R. 15.)  While an ALJ need not accept an opinion that is conclusory and brief, when there is ambiguity in the record, "authorities such as <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996) and section 404.1512(e) of 20 C.F.R. suggest that . . . further inquiry of the treating source(s) should precede a final determination of whether the opinions are not adequately explained or

---

[6]    Although not cited by plaintiff, in a later treatment note, dated November 5, 2008, Dr. Israel noted, in pertinent part, that plaintiff's mood was depressed and anxious and that plaintiff was obese. (A.R. 399.)

supported." <u>Estrada v. Astrue</u>, 2008 WL 4643866, *2 (C.D. Cal. Oct. 20, 2008).

Moreover, and contrary to the ALJ's assertion, Dr. Chang did discuss plaintiff's drug use. Indeed, as discussed *supra*, it is the ambiguity surrounding Dr. Chang's discussion of plaintiff's drug use that should have triggered the ALJ's duty to recontact Dr. Chang and develop the record further. Critically, without further inquiry, it is unclear whether Dr. Chang's treatment notes reflect his opinion regarding plaintiff's limitations and restrictions in the absence or presence of drugs. Accordingly, further development of the record is necessary for the ALJ to consider the opinion of Dr. Chang properly.[7]

---

[7]    Additionally, it appears that the ALJ attempts to minimize Dr. Chang's later treatment notes by stating that they indicate plaintiff's condition is "stable and/or well controlled." (A.R. 14.) A closer review of the record, however, reveals that plaintiff's condition was anything but stable and/or well controlled. (*See*, *e.g.*, A.R. 312 (June 15, 2006 -- doing a lot better; situational and severe anxiety; o.k. mood; moderately low energy; severe daytime sleepiness; and improved OCD); A.R. 311 (July 20, 2006 -- doing worse; variable and irritable mood; severe daytime sleepiness; low concentration; severely low energy; moderate mind racing; moderate impulsivity; and decreased handwashing (OCD)); A.R. 310 (August 17, 2006 -- doing o.k.; situational anxiety; increased irritability; severely low energy; severe daytime sleepiness; improved cognition; low concentration; denial of mind racing, impulsivity, spending sprees, and bad decisions; decreased OCD); A.R. 309 (August 24, 2006 -- decreased energy; and increased daytime drowsiness); A.R. 308 (September 9, 2006 -- doing worse; increased dysphoric and irritable mood; increased crying; severely low energy; poor sleep; severe daytime sleepiness; moderate mind racing; deny impulsivity, spending sprees, and bad decisions); A.R. 307 (September 29, 2006 -- doing ok/better; slight anxiety; decreased irritable mood; moderately low energy; increased sleep; moderate daytime sleepiness; decreased mind racing); A.R. 305 (November 9, 2006 -- doing worse; increased dysphoric and irritable mood; severe generalized anxiety; low energy; decreased sleep; insomnia; severe daytime sleepiness; moderate mind racing; increased spending sprees; and OCD better); A.R. 304 (December 21, 2006 -- "all kinds of stress"; severe generalized anxiety; o.k. mood; severely elevated energy; o.k. sleep; slight daytime sleepiness; slight mind racing; and denial of impulsivity and shopping sprees); A.R. 303 (January 18, 2007 - new ADHD diagnosis; severe

**III.  The ALJ's Reasons For Rejecting Plaintiff's Credibility Are Neither Clear Nor Convincing.**

Once a disability claimant produces objective evidence of an underlying impairment that is reasonably likely to be the source of her subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)(en banc); see also 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §

---

anxiety; irritable and angry mood; elevated energy; severe daytime sleepiness; mind racing and spending sprees; o.k. cognition; and low concentration); A.R. 302 (February 20, 2007 -- increased focus, multitasking, alertness, energy; concentration; and irritable mood); A.R. 301 (illegible date, 2007 -- doing better; increased anxiety; irritable mood; o.k. sleep; severe daytime sleepiness; and better concentration); A.R. 300 (May 8, 2007 -- apathetic and dysphoric mood; unhappy; poor sleep; decreased concentration; decreased impulsivity; and becomes overwhelmed and anxious); A.R. 418 (August 20, 2007 -- Adjustment Disorder and ADHD diagnosis; notation that plaintiff had cyclic presentation, not stabilized yet).)

404.1529(c).

An ALJ may not rely on a plaintiff's daily activities to support an adverse credibility determination when those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis. Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990). As the Ninth Circuit noted in Lester, the ALJ must evaluate claimant's "'ability to work on a *sustained* basis.'" 81 F.3d at 833 (emphasis in original)(*citing* 20 C.F.R. § 404.1512(a)). A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (A.R. 15.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for rejecting plaintiff's credibility must be "clear and convincing."

In his decision, the ALJ found plaintiff to be not credible, in part, because of purported inconsistencies in plaintiff's reported drug use. Specifically, the ALJ noted that, while plaintiff had reported last using drugs in 2004, her remission was noted as "questionable" in a June 10, 2006 psychiatric consultative examination report. (A.R. 14.) The ALJ further noted that in a May 1, 2006 visit to the Riverside County Department of Mental Health, plaintiff's methamphetamine abuse

14

was noted along with a reference to "methamphetamine use eight months ago from May of 2006." (*Id.*)

Contrary to the ALJ's suggestion, Dr. Rodriguez, who completed the June 10, 2006 psychiatric consultative examination report to which the ALJ referred, did not expressly find plaintiff's remission "questionable." Rather, Dr. Rodriguez merely noted that plaintiff "supposedly" stopped using illegal drugs in 2004, and "supposedly" was in full remission. (A.R. 273.) To the extent the ALJ found Dr. Rodriguez's statement to be unclear or ambiguous with respect to plaintiff's remission, the ALJ should have recontacted Dr. Rodriguez and conducted an appropriate inquiry. Further, as discussed in detail above, the record is ambiguous with respect to plaintiff's drug use. After carefully reviewing the record and the supplemental briefs from both parties, it is still unclear when plaintiff last used drugs and, thus, whether plaintiff's statements regarding her drug use are, in fact, inconsistent with the aforementioned medical records. Accordingly, absent further inquiry, the ALJ's reason for finding plaintiff to be not credible is neither clear nor convincing.

Furthermore, while the ALJ proffered other reasons for finding plaintiff to be not credible -- *to wit*, that (1) the medical record did not support the alleged severity and impact of plaintiff's impairments; and (2) plaintiff's daily activities were not consistent with her alleged symptoms -- those reasons are neither clear nor convincing. (A.R. 15.) The ALJ's first ground is neither clear nor convincing, because, in view of the uncertainty surrounding plaintiff's drug use, it is not clear whether the medical record does or does not support the

15

alleged severity and impact of plaintiff's impairments.  Significantly, and of concern to the Court, plaintiff's medical records appear to show that plaintiff's condition has a cyclical presentation and was not stabilized for an extended period. (*See, e.g.,* A.R. 418.)  In pertinent part, plaintiff has periods of marked lows during which she experiences, *inter alia*, severe anxiety (A.R. 304, 312), severely low energy (A.R. 310), low concentration (A.R. 300, 310-311), moderate mind racing (A.R. 303, 311), and severe sleepiness (A.R. 303, 305, 310, 312). *See* Note 7, *supra*.  While the ALJ concludes that plaintiff's condition is controllable in the absence of drug abuse, his conclusion is premised on an assumption that plaintiff was abusing drugs during the relevant disability period -- an assumption which, as discussed above, does not appear to be clearly supported by substantial evidence.  Further, to the extent the ALJ may have relied on Dr. Rodriguez's June 10, 2006 statement that plaintiff "can easily recover within twelve months" if she stops using illegal drugs and takes her psychiatric medications, plaintiff's medical record may belie Dr. Rodriguez's prognosis.  (A.R. 276.)  Moreover, the failure of the medical record to corroborate fully plaintiff's subjective symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony.  <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ's second ground for discrediting plaintiff is also neither clear nor convincing.  In his decision, the ALJ noted that, in a June 10, 2006 psychiatric consultative examination, Dr. Rodriguez reported that plaintiff was able to drive her own car, run errands, go to the store with her husband, dress and bathe herself, participate in cooking and making snacks, perform household chores, take walks, handle her own

16

cash, pay the bills, pick up after her children, make dinner with her husband's help, and take her two children to school. (A.R. 15.) Accordingly, the ALJ determined that plaintiff's "symptoms in combination are not so disabling that she is unable to engage in activities typical of most individuals." (*Id.*) The relevant test, however, is not whether plaintiff can engage in activities typical of most individuals; but rather, whether plaintiff is able to work on a *sustained* basis. *See* <u>Lester</u>, 81 F.3d at 833. Here, the ALJ fails to explain how plaintiff's basic activities and household chores translate into the ability to perform full-time work. *See* <u>Fair</u>, 885 F.3d 602. Further, it is unclear how plaintiff's limited daily activities are inconsistent with her alleged symptoms. *See* <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)(noting that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [plaintiff's] crediblity as to her overall disability").

Accordingly, the ALJ erred by failing to provide clear and convincing reasons, as required, for finding plaintiff to be not credible.

**IV. <u>The ALJ Must Review And Reconsider The Lay Witness Testimony Of Plaintiff's Son, The Third Party Statement Of Plaintiff's Mother, And Plaintiff's Assessed RFC</u>.**

Based on the foregoing, there are several matters that the ALJ needs to review and reconsider on remand. As a result, the ALJ's

conclusion regarding the credibility of the lay witness testimony and the third party statement, as well as his RFC assessment for plaintiff, may change.  Therefore, the Court does not reach plaintiff's second and fourth claims -- *to wit*, that the ALJ erred:  (1) in considering both the lay witness testimony of plaintiff's son, Javier Palos, and the third party statement of plaintiff's mother, Teresa Coronado; and (2) in determining plaintiff's RFC.  To properly review and reconsider these issues, the ALJ needs to develop the record to resolve the ambiguity surrounding plaintiff's drug use.  Once this issue is clarified, the ALJ can determine what impact, if any, this has on his assessment of the lay witness testimony, the third party statement, and plaintiff's RFC.

**V.    Remand Is Required.**

    The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.* at 1179-81.

    Remand is the appropriate remedy to allow the ALJ the opportunity

to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record). On remand, the ALJ must correct the above-mentioned deficiencies and errors.

Specifically, the ALJ needs to consider the opinion of Dr. Isreal and, if appropriate, give clear and convincing reasons for rejecting his opinion. Additionally, the ALJ needs to recontact Dr. Chang to clarify his treatment notes with respect to the timing and extent of plaintiff's drug use. In pertinent part, although Dr. Chang's later treatment notes do not discuss plaintiff's drug use, his treatment notes may reflect plaintiff's limitations and restrictions in the absence of drug use. Accordingly, further inquiry may be appropriate. Once the ALJ resolves the ambiguity surrounding plaintiff's drug use, the ALJ can properly consider plaintiff's credibility, the credibility of both the lay witness testimony and the third party statement, whether plaintiff's drug use is a contributing factor material to the determination of disability, and plaintiff's RFC. Lastly, to the extent that plaintiff's RFC may need to be reassessed, additional testimony from a vocational expert likely will be required to determine whether plaintiff can perform work other than her past relevant work.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for

19

further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 1, 2011

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

20